## In re ABBOT KINNEY CO.

### No. 43551.

District Court, S. D. California,
Central Division.

May 27, 1946.

Nicholas & Davis, of Los Angeles, Cal., for petitioning creditors.

Grainger & Hunt, of Los Angeles, Cal., for alleged bankrupt.

Francis B. Cobb, of Los Angeles, Cal., for Charles J. Brown.

J. F. T. O'CONNOR, District Judge.

The report of the Special Master on involuntary petition in bankruptcy in the above entitled matter is before this court for review.

The Special Master, in his report, recommends against an adjudication, which means a denial of the involuntary petition.

The findings and recommendations of the Special Master on this one issue are approved, and it is the order of this court that the involuntary petition be dismissed.

The principal controversy is really a collateral matter:

The determination of the ownership of the $30,000 paid to Charles J. Brown after the filing of the involuntary petition in bankruptcy. The ownership of the said $30,000 fund was determined by the Referee (not as Special Master), and his order in connection therewith is now before this court on review.

The alleged bankrupt corporation, Abbot Kinney Company, was indebted for the purchase of a certain sprinkler contract to F. R. Cruickshank & Company for a large sum of money. The creditor offered to accept from the corporation ten thousand ($10,000) dollars in full payment of the balance due on the sprinkler contract, and the corporation was financially able to

make such payment and purchase the contract.

John Harrah was a member of the Board of Directors of the alleged bankrupt corporation, and the Executive Committee was composed of John Harrah, Carleton Kenney, and Alfred U. Newton. It is clear that Carleton Kenney was under the domination of John Harrah. E. A. Gerety was the general manager and chief executive officer of the corporation, and Charles J. Brown was a close friend of John Harrah and his son, William Harrah. At the instigation of John Harrah, a conspiracy was entered into between John Harrah, William Harrah, Charles J. Brown, and E. A. Gerety, the object of which was to have the Executive Committee refuse to purchase the sprinkler contract for the sum of ten thousand ($10,000) dollars and to have Charles J. Brown purchase the same for the conspirators, and thereafter demand from the corporation its payment, and that Charles J. Brown did so purchase the contract for fifteen thousand ($15,000) dollars. E. A. Gerety and John Harrah, thereafter, told Brown that the corporation had seventy-five hundred ($7500) dollars cash on hand which would be paid to him upon his demand and said sum was so paid.

John Harrah had, prior thereto, as a member of the Executive Committee and Board of Directors, stated that the contract was of no value and that he would not authorize payment thereon so long as the bonded indebtedness remained unpaid. After the contract was acquired by Brown, John Harrah instructed Carleton Kenney to vote for payment of $7500 demanded by Brown, and, thereafter, Gerety and John Harrah told Brown that the corporation had $30,000 on hand and on November 7, 1944, thereafter, the involuntary petition in bankruptcy was filed herein. John Harrah instructed the said Carleton Kenney to vote for such $30,000 payment, which was thereupon paid to Charles Brown. The written assignment of the contract to Brown was for the benefit of Gerety, John Harrah, William Harrah and Brown.

On November 30, 1944, William Harrah notified the corporation that he had purchased a one-third interest in the unpaid balance of the sprinkler contract on November 25, 1944. Brown and his associates strenuously contended that the court was without jurisdiction, notwithstanding the provisions of the stipulation signed by all of the parties and filed with the court.

The authorities hold that, under the facts in this action, the court has jurisdiction to determine the ownership of the $30,000.

■ An involuntary petition in bankruptcy has been filed against a corporation within this jurisdiction by three persons who represent that they are creditors and an act of bankruptcy is alleged. True, they may ultimately be determined to be secured creditors and could not qualify as petitioning creditors. On the other hand, they might show that their alleged security was valueless. They might not be able to support the alleged act of bankruptcy, but, while the proceeding was before the bankruptcy court, the bankruptcy court was a court of competent jurisdiction to determine matters pertaining to the property of the bankrupt, and property found in the possession of the bankrupt. No other court during the pendency of the proceeding could, without the consent of the bankruptcy court, entertain litigation in connection with the property of the alleged bankrupt. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645.

■ During the pendency of the proceedings, it would be quite possible and proper for persons to appear in this proceeding claiming to own property in the possession of the bankrupt and request that their property be released to them, and should the court upon the said hearing determine that they were not entitled to the return of the property, and it belonged to the bankrupt, such a determination would be res adjudicata in any subsequent proceedings.

While the situation is not quite kindred, nevertheless this $30,000 was in the possession of the alleged bankrupt at the date these proceedings were filed. That date is the line of cleavage, and the fact that it came to Brown's hands and back to the Clerk of the court makes little difference. Let us suppose that the property was in the hands of the alleged bankrupt and some person claimed it, and the debtor by a

proceeding during the pendency of the proceeding brought the person so claiming the property before the court—we will say upon a matter not as highly contested as here. Let us assume that the debtor was not sure of its position and was not sure if the debtor or the claimant owned the property, and that the court after a full determination determined that it was the property of the debtor.

■ That determination would be a final determination binding the parties in the future.

■ This rule is necessary since the filing of a bankruptcy proceeding, regardless of whether an adjudication is secured or not, throws a blanket of protection upon all property of the alleged bankrupt and particularly property in the possession of the bankrupt whether owned by the bankrupt or not.

■ The court could assume or reject the jurisdiction herein exercised. In view of the agreement of the parties, and in view of the spirit and provisions of the Bankruptcy Act, the contested involuntary petition in bankruptcy should have been expeditiously disposed of and every collateral matter deferred, if possible, and relegated to the other courts after the dismissal of the involuntary petition—but we have had a most thorough and complete trial of the controversy. The records show most extensive presentation, examination and cross-examination of witnesses, production of documents, and the Referee's findings are extensive and complete. The record supports the findings of the Referee and it appears that his conclusions of law in the premises are proper and supportable. Therefore, it would not appear, at this stage of the proceedings, to be equitable for the court to exercise its discretion in refusing to entertain the matter which has already been tried, and on which findings have already been made, and direct the parties to enter upon the litigation again in some other court. The conclusion is, therefore, that the court had jurisdiction and the findings of the Special Master are approved, on this point.

Had the strategy of respondents prevailed, and had they been able to force a hearing on the involuntary petition, instead of the order to show cause proceeding, then it is quite possible that the court would not have entertained at that stage (and after dismissal of the involuntary petition) a determination of the ownership of the thirty thousand ($30,000) dollar fund. The record is so complete on the conspiracy and the various elements thereof, that the respondents could hardly hope to secure a different result in any other court, state or federal.

The report of the Special Master on the involuntary petition in bankruptcy, including findings of fact, conclusions of law and recommendations, is approved by this court, with the following exceptions:

The Referee found that the corporation could have purchased the sprinkler contract for ten thousand ($10,000) dollars, and, further, that the corporation was able to discharge its obligation and acquire the sprinkler contract, but was prevented from so doing, as stated.

■ The record clearly supports the position taken by the Referee up to this point, but beyond this point in applying those principles of equity which must be applied here, and in condemning the action of the conspirators, I cannot agree with the Referee's finding that the corporation should suffer through the acts of the conspirators and pay anything more than ten thousand ($10,000) dollars upon the said contract. The Referee's order in effect is penalizing the corporation five thousand ($5,000) dollars in an effort to make whole the conspirators and make full restitution to them. All equities of the case lie in the other direction, and at this point only, the court disagrees with the Referee.

Since the primary element of the conspiracy was to cause the corporation to reject the ten thousand ($10,000) dollar transaction with the principal, to the end that the conspirators could acquire the contract and make the corporation pay more than the ten thousand ($10,000) dollars, it would be a partial recognition and sanction of the conspiracy to so provide herein that the corporation in effect pay more than the ten thousand ($10,000) dollars.

Therefore, the finding and order that seventy-five hundred ($7500) dollars be repaid, is reversed, and it is ordered that there shall be repaid the sum of twenty-five hundred ($2500) dollars out of the thirty thousand ($30,000) dollars on deposit, to the parties making the deposit, and the balance shall be paid to the corporation.

Each party shall pay one-half of the costs.

Let judgment be entered accordingly.